# Exhibit 1
# Part D

U.S. Department of State

## CERTIFICATE TO BE ATTACHED TO DOCUMENTARY
## EVIDENCE ACCOMPANYING REQUISITIONS IN
## THE UNITED STATES FOR EXTRADITION
## AMERICAN FOREIGN SERVICE

| | |
|---|---|
| Ankara, Turkiye | 06-26-2024 |
| Place and Date (mm-dd-yyyy) | |

Jeffry L. Flake
Name

Ambassador
Title

of the United States of America at      Ankara, Turkiye

hereby certify that the annexed papers, being      extradition request, additional documents and

its English translation

properied to be used upon an application for the extradition from the United States of America

of E___ Tol___

charged with the crime of      protecting an offender

and destroying, concealing and altering evidence

alleged to have been committed in      Istanbul, Turkiye

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of the Republic of Turkiye

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

this      6th      day of      June 2024
Month and Year

Signature

Jeffry L. Flake, Ambassador
Type Name and Title of Certifying Officer
of the United States of America.

DS-36
04-2014

T.C.

ADALET BAKANLI I

Dı li kiler ve Avrupa Birli i Genel Müdürlü ü

**ACELE**

Sayı : E.81016607-4-1-TR-870-2024-12713/93476                          25.06.2024
Konu : Eylem TOK

DI LER BAKANLI INA

(Konsolosluk Hizmetleri ve Yurt Dı ında Ya ayan Vatanda lar Genel Müdürlü ü)

"Suçluyu Kayırma" ve "Suç Delillerini Yok Etme, Gizleme veya De i tirme" suçlarından stanbul Cumhuriyet Ba savcılı ı tarafından yürütülen 2024/56578 sayılı soru turma kapsamında stanbul 7. Sulh Ceza Hâkimli inin 06.03.2024 tarihli, 2024/1952 De i ik   sayılı ve stanbul 10. Sulh Ceza Hâkimli inin 13.03.2024 tarihli, 2024/2766 De i ik   sayılı yakalama emirlerine istinaden ulusal seviyede ve A-2613/3-2024 kontrol numaralı Kırmızı Bülten'le uluslararası seviyede aranan ▆▆▆▆▆ T.C. kimlik numaralı Eylem Tok'un Amerika Birle ik Devletleri'nden iadesi talep edilmi ti.

Bu kapsamda, Amerika Birle ik Devletleri Adalet Bakanlı ından alınan e-posta ile iade talebimize dair ilave bilgi ve açıklama istenmi olup; keyfiyetin iletildi i stanbul Cumhuriyet Ba savcılı ı tarafından düzenlenen ve Eylem Tok'a isnat olunan suçlara ili kin ilave bilgi ve açıklamaların yer aldı ı belge, ngilizce tercümesiyle birlikte ili ikte sunulmu tur.

Bu itibarla; mezkûr evrakın Ankara'daki Amerika Birle ik Devletleri Büyükelçili ince mühürlenmesi ve tasdiki gereti inden evrakın diplomatik nota e li inde sözü edilen Büyükelçili e iletilerek Amerika Birle ik Devletleri makamlarına gönderilmesi ile adı geçenin ülkemize iadesinin sa lanmasını teminen gerekli giri imlerde bulunulması hususunda gere ini saygılarımla arz ederim.

Gökhan ERDO AN
Hâkim
Bakan a.
Genel Müdür Yardımcısı

Ek: Takım evrak (Fiziki olarak gönderilecektir)

Bu belge, güvenli elektronik imza ile imzalanmı tır.

---

Dı li kiler ve Avrupa Birli i Genel Müdürlü ü                                    Bilgi çin: Suçlu adesi ve Hükümlü Nakli Bürosu
Milli Müdafaa Caddesi No: 22 Kızılay-Çankaya/ANKARA
Faks No: (0312) 219 45 23   E-posta: diabgm@adalet.gov.tr
nternet Adresi: www.diabgm.adalet.gov.tr   Kep Adresi: adaletbakanligi@hs01.kep.tr          Telefon No: (0312) 414 87 26

UYAP Bili im Sistemindeki bu dokümana http://vatandas.uyap.gov.tr adresinden   XqCrHpZ – pHTMUQO – 7QI XAUp – LY3XEQ= ile eri ebilirsin

# REPUBLIC OF TÜRKİYE

## MINISTRY OF JUSTICE

### Directorate General for Foreign Relations and European Union Affairs

**Number :** E.81016607-4-1-TR-870-2024-12713/93476                           25.06.2024
**Subject :** Eylem TOK

### TO THE MINISTRY OF FOREIGN AFFAIRS
### (Directorate General for Consular Services and Citizens Living Abroad)

Within the scope of the investigation conducted by the Istanbul Chief Public Prosecutor's Office numbered 2024/56578 for the offenses of "Protecting an Offender" and "Destroying, Concealing or Altering Evidence", pursuant to the arrest warrants of the Istanbul 7th Criminal Judgeship of Peace dated 06.03.2024, and numbered 2024/1952, and of the Istanbul 10th Criminal Judgeship of Peace dated 13.03.2024, and numbered 2024/2766, the extradition of Eylem Tok, the Republic of Türkiye ID numbered ████████, who was sought at an international level with a Red Notice control numbered A-2613/3-2024, was requested from the United States of America.

In this regard, additional information and clarifications regarding our extradition request have been requested via e-mail received from the Department of Justice of the United States of America and the circumstance has been presented, and the document issued by the Istanbul Chief Public Prosecutor's Office, which includes additional information and clarifications regarding the offences imputed on Eylem Tok, is attached herewith, accompanied by the English translation thereof.

In this respect, since the aforementioned document must be sealed and certified by the Embassy of the United States of America in Ankara, I respectfully request that the document be forwarded to the mentioned Embassy accompanied by a diplomatic note and be submitted to the authorities of the United States of America and that the necessary initiatives be taken to ensure the extradition of the mentioned person to our country.

Gökhan ERDOĞAN
Judge
On Behalf of the Minister
Deputy Director General

Annex: Set of documents (Shall be sent as a hardcopy)

This document hereby has been signed with secure electronic signature.



## EYLEM TOK HAKKINDA RESMİ YANITIMIZ

Eylem Tok'un oğlu olan      T.C.      01.03.2024 tarihinde, saat 23.20 sıralarında, sevk
ve idaresindeki 34 EGG 06 plakalı Porsche Taycan (Araç Eylem Tok'un eski eşi,
        T.C.      'un babasına ait olan Timur Medya Limited Şirketi adına kayıtlıdır) 4S model araç
ile seyir halindeyken aşırı hızlı şekilde girdiği virajda aracı kaydırmış; bu sırada araçlarının
bozulmuş olması nedeniyle yol kenarında duraklama yapan      O.M.A.      S.K.
    I.G.   ,    H.T.   ve    T.A.      isimli şahıslara çarpmış ve trafik kazası
meydana gelmiştir. Kaza yoldan geçen vatandaşlar tarafından ambulans ve polise bildirilmiştir.

Kaza nedeniyle   O.M.A.   ölmüş, diğer şahıslar yaralanmışlardır.

Şüpheli Eylem Tok'un trafik kazasının meydana gelmesinde bir rolü bulunmamaktadır.
Bununla birlikte, kazanın hemen ardından kendisine bilgi verilen Eylem Tok, hakkında adli
süreç yürütülmesini engellemek amacıyla      T.C.      'un önce Mısır'a, ardından ise
Amerika Birleşik Devletleri'ne kaçmasını sağlamıştır. Eylem Tok,      T.C.      ile
birlikte halen Amerika Birleşik Devletleri'nde bulunmaktadır. Eylem Tok olayı öğrendikten
sonra olay yerine intikal etmiştir. Eylem Tok'un Mağdur      I.G.      'e ait cep telefonunu,
içerisinde kazaya ilişkin bir delil olabileceği kanaatiyle ve delilleri gizlemek maksadıyla
uhdesine aldığı, tanık beyanlarıyla ispatlanmıştır. (Bu olay aşağıda ayrıntılı açıklanacaktır.)

Telefonun en son Eylem Tok'ta olduğu ve onun tarafından      T.C.      'ın şoförü Adem
Kızıltepe'nin kullandığı araca bırakıldığı sabittir. Böylece Eylem Tok'un delil niteliğinde
olabilecek olan bu telefonu alıp      T.C.      'un şoförü Adem Kızıltepe'ye vermiştir.

Eylem Tok ve      T.C.      *iade* talebimize istinaden Amerika Birleşik Devletleri'nde
yakalanmış ve tutuklanmıştır.

Eylem Tok TCK'nın 281 ve 283. maddelerinde düzenlenen Suçluyu Kayırma ile Suç Delillerini
Yok Etme, Gizleme veya Değiştirme suçlarını işlemiştir.

### 1.  TCK 281 Suç Delillerini Yok Etme, Gizleme veya Değiştirme suçu Bakımından

TCK'nın 281. maddesinde düzenlenen Suç Delillerini Yok Etme, Gizleme veya Değiştirme
suçu, Kanunun millete ve devlete karşı suçlar başlıklı üçüncü kısmında, adliyeye karşı suçlar
başlıklı ikinci bölümünde şu şekilde düzenlenmiştir:
*"(1) Gerçeğin meydana çıkmasını engellemek amacıyla, bir suçun delillerini yok eden, silen,
gizleyen, değiştiren veya bozan kişi, altı aydan beş yıla kadar hapis cezası ile cezalandırılır.
Kendi işlediği veya işlenişine iştirak ettiği suçla ilgili olarak kişiye bu fıkra hükmüne göre ceza
verilmez.*
*(2) Bu suçun kamu görevlisi tarafından göreviyle bağlantılı olarak işlenmesi halinde, verilecek
ceza yarı oranında artırılır.*
*(3) İlişkin olduğu suç nedeniyle hüküm verilmeden önce gizlenen delilleri mahkemeye teslim
eden kişi hakkında bu maddede tanımlanan suç nedeniyle verilecek cezanın beşte dördü
indirilir."*

Madde gerekçesine bakıldığında; bu suçun konusunu, *daha önce işlenmiş olan bir suçun delil ve eserleri* oluşturmaktadır. Bir suçtan elde edilmiş olan eşyayı da, suçun eser ve delili olarak kabul etmek gerekir. Bu itibarla, söz konusu suç, önceden işlenmiş bir suçun varlığını gerekli kılmaktadır.

Söz konusu suç, seçimlik hareketli bir suçtur. Bu seçimlik hareketler, suçun delil ve eserlerinin yok edilmesi, silinmesi, gizlenmesi, değiştirilmesi veya bozulmasından ibarettir.

Bu suçun oluşabilmesi için, failin gerçeğin tam olarak meydana çıkarılmasını engellemek amacıyla ya da gerçeğin istenildiği ölçüde ortaya çıkarılmasını engellemek için hareket etmesi gerekir.

Suç delillerini gizleme, yok etme ya da değiştirme suçu, delilin bizatihi kendisine, suçtan elde edilen değere ya da suça ilişkin failin kusur durumuna ve buna dayalı olarak alacağı ceza miktarını etkileyecek bazı unsurlara yönelik gerçekleştirilmiş olabilir. Olay yerinin görüntülerinin, kazanın/olayın faillerinin, Tok'un olay yerindeki davranışlarının, oğlunu ve diğer araç sürücüsünü olay yerinden kaçmalarını sağlamaya yönelik hareketlerinin görüntüsünün alınmasının engellenmesi, olay delillerinin kayda alınmasının engellenmesi ile olaya ilişkin polise hızlı ve doğru bilgilerin verilmesinin engellenmesi, kaçmasına imkân sağlayarak alkol etkisinde olduğuna dair izleri olan bir kazada alkol muayenesi yapılmasının engellenmesi bunların hepsi TOK'un 281. Maddesindeki fiileri irtikap ettiğine birer açık örnektir.

Taksirle ölüme neden olma suçunda, failin kusurunun tespiti ve gerçekleşen zarar, failin cezalandırılması ve cezanın miktarının belirlenmesi açısından önemli ve zorunludur.

Kaza sonrası oluşan zarar, olay yeri inceleme, görgü tespit tutanakları, fotoğraflama, kamera görüntüsü gibi delillerle yapılabilirken; failin kusurunun tespitinde aracın hızı, dikkat durumu, frene basma ve durma iradesi maddi delillerle ya da tanık beyanı ile yapılabilmektedir. Ancak failin şahsına dayalı kazada alkollü olup olmadığı gibi bazı tespitler ise münhasıran fail üzerinde yapılacak tespit ile mümkün olmaktadır.

Türk Ceza Hukuku ve uygulamasında, alkollü olarak araç kullanma eylemi failin eylemdeki kusurunu basit taksirden bilinçli taksir seviyesine çıkararak failin daha yüksek oranda ceza almasına sebebiyet verecektir.

TCK'nın 22.maddesinin 3.fıkrasında *"Kişinin öngördüğü neticeyi istememesine karşın, neticenin meydana gelmesi halinde bilinçli taksir vardır; bu halde taksirli suça ilişkin ceza üçte birden yarısına kadar artırılır."* şeklindeki cezada failin cezası yarı oranına kadar arttırılabilecektir.

Yine anılan kanunun 61.maddesi gereğince *"Hâkim, somut olayda;*
*a) Suçun işleniş biçimini,*
*b) Suçun işlenmesinde kullanılan araçları,*
*c) Suçun işlendiği zaman ve yeri,*
*d) Suçun konusunun önem ve değerini,*
*e) Meydana gelen zarar veya tehlikenin ağırlığını,*
*f) Failin kast veya taksire dayalı kusurunun ağırlığını,*
*g) Failin güttüğü amaç ve saiki,"*
Göz önünde bulundurarak, işlenen suçun kanuni tanımında öngörülen cezanın alt ve üst sınırı arasında temel cezayı belirleyecek,

Suçun olası kastla ya da bilinçli taksirle işlenmesi nedeniyle yapılacak artırım, birinci fıkra hükmüne göre belirlenen ceza üzerinden yapılacaktır.

T.C.          'a isnat edilen TCK'nın 85.maddesinin ikinci fıkrasında düzenlenen taksirle bir kişinin ölümüne birden fazla kişinin ise yaralanmasına neden olma suçu; suç faili için 2 yıldan 15 yıla kadar hapis cezası ile cezalandırma öngörmektedir.

Hal böyleyken failin kusur durumuna ilişkin delillere müdahale failin alacağı ceza miktarı açısından önemli ve farklı sonuçlar doğurmaktadır.

Somut olayda; Eylem Tok, kazayı gerçekleştiren oğlu          T.C.          'u olay yerinden kaçırarak kazaya ilişkin failin kusur durumunu önemli ölçüde etkileyecek bazı önemli delilleri de yok etmiş tanıklar da dâhil olmak üzere beyanları etkileyecek şekilde eylemlerde bulunmuştur.

Kazadan sonra          T.C.          'un kaçırılmış olması sebebiyle olayın şüphelisine dayalı alkol testi vs. gibi tespitler yapılamamıştır.

T.C.          kazadan hemen sonra şoförü Adem Kızıltepe ve annesi Eylem Tok'u aramıştır. Eylem Tok da ilk önce çalışanı Ayşe Ceren Saltoğlu ile kazanın olduğu yere giderek T.C.          'u,          D.O.O.          'ı ve .          A.K.          'i alarak evlerine bırakmıştır. Adı geçen şahıslar kazayı kolluk birimlerine veya sağlık görevlilerine bildirmeden olay yerinden ayrılmışlardır.

Samet Korkmaz isimli şahıs 34 GP 5370 plakalı aracı ile giderken kazayı gördüğünü söylemiştir. Kazada yaralılardan birinin kendisine "telefonumu aldı birisi" dediğini belirtmiştir. Samet Korkmaz akabinde yaralılara ilkyardım uyguladığını ve 112 ekiplerini arayarak kazayı bildirdiğini ve 112 ekiplerinin gelmesini beklediğini belirtmiştir.

Eylem Tok kazayı öğrendikten sonra ayrıca eski eşi Bülent Cihantimur'u aramış ve eve gelmesini söylemiştir. Bülent Cihantimur da bunun üzerine hemen Eylem Tok ile T.C.          'un ikametine gitmiştir.

Adem Kızıltepe, Ayşe Ceren Saltoğlu ve          D.O.O.          ifadelerinde, T.C. 'un kazadan hemen sonra Eylem'i aradığını ve Eylem'in olay yerine gelerek T.C. ve arkadaşlarını evlerine götürdüğünü teyit etmişlerdir.

Sonrasında ise, Adem Kızıltepe'nin beyanlarına göre; Eylem Tok, Adem Kızıltepe'yi de alarak tekrar kaza mahalline doğru gitmiştir. Yukarıda belirtilen plan dâhilinde olay yerine giderek olay mahallindeki oğlunun aleyhine olabilecek delilleri tespit amacıyla ve gerekirse bunlara müdahale ederek saklamak, gizlemek, amacında olduğu anlaşılmaktadır. Fakat polisleri görünce hemen ikametine geri dönmüştür. Tam bu noktada soruşturma ve kovuşturma için yeterli olan şüpheden çok daha kuvvetli bir şüphe mevcuttur.

Mağdurlar          T.A.          ve          İ.G.          olay yerinden telefonlarının alındığını iddia etmişlerdir.          D.O.O.          Z.H.D.          ve          K.A.          mağdurlardan birinin telefonunu flash ışığını kullanarak kafasındaki yaraya bakması için .          Z.H.D.

a verdiğini ifade etmişlerdir.          Z.H.D.          da bunu doğrulamış ve telefonu alıp mağdura yardım ettiğini, dalgınlıkla telefonu cebine koyduğunu, yaşadıkları yere geri döndüğünde ise telefonun yanında olduğunu fark ettiğini, telefonu mağdura iade etmesi için olay yerine geri dönecek olan          K.A.          'a verdiğini, K.A. 'ın ise telefonu yaşadıkları

yerdeki (sitede) güvenlik görevlilerine verdiğini belirtmiştir. **Z.H.D.** 'a verilen telefonunun mağdurlardan **I.G.** e ait telefon olduğu tespit edilmiştir. **T.A.** ın telefonunun olay yerinde alındığına ya da kaybolduğuna dair ise bir delil elde edilememiştir.

Adem Kızıltepe, **Z.H.D.** , Berna Öcalgiray, Ayşe Ceren Saltaoğlu ise ifadelerinde telefonu güvenlik görevlilerinden Eylem Tok'un aldığını belirtmiştir. Güvenlik görevlileri telefonu Berna Öcalgiray'a verdiklerini söylemişlerdir. Kamera görüntülerinde bir telefon alışverişine dair kısa bir an mevcuttur ancak **D.O.O.** ve bizzat Eylem Tok ile **T.C.** un şoförlüğünü yapan Adem Kızıltepe ile Eylem Tok'un çalışanı ve tanıdığı olan Ayşe Ceren Saltoğlu, telefonu Eylem Tok'un güvenlik görevlilerinden "sahibini tanıdığını, kendisinin vereceğini" söyleyerek aldığını beyan etmişlerdir. Buradan da anlaşılacağı üzere soruşturma kapsamında açık bir şekilde Eylem Tok'un içerisinde olay yerine ait çok sayıda fotoğraf ve video olabilecek bir delili aldığı net bir şekilde ifade edilmiştir.

Berna Öcalgiray, onun kardeşi Selim Abra, oğlu **D.O.O.** ın şoförü İbrahim Boz da beyanlarında Berna Öcalgiray güvenlik görevlilerine ismini ve numarasını verdiğinde Eylem Tok'un ona "neden ismini, numaranı veriyorsun, keşke vermeseydin" diyerek tepki gösterdiğini belirtmişlerdir. Eylem Tok'un kendisinden sadır olan bu sözler şüphelinin içerisinde bulunduğu kastın adeta ağzından dökülmesi şeklindedir. Küçük bir kişisel bilginin dahi güvenlik görevlileri ile paylaşımına rıza göstermediği çok açıktır.

Eylem Tok telefonu en son bulunduğu yerden alıp şoför Adem Kızıltepe'nin kullanımındaki araca binerek uzaklaşmıştır. Telefonu bu şekilde Eylem Tok'un eline geçtiği sabittir. Zira telefon en son Eylem Tok'un binmiş olduğu, şoför Adem'in kullanmakta olduğu araçta bulunmuştur. Eylem Tok yurtdışına kaçmadan önce telefonu araca bırakmıştır.

Eylem Tok'un ülkeyi terk etmesinin akabinde, cep telefonunu onun aldığına yönelik tanık beyanlarıyla bu durumun ortaya çıkması üzerine olaydan birkaç gün sonra cep telefonu **T.C.** un şoförü Adem Kızıltepe tarafından bulunmuş ve onun aracılığıyla kolluk görevlilerine teslim edilmiştir. Şoförleri onların mahiyetinde çalışan emir ve talimatlarını uygulayan kimselerdir, TOK'un uhdesinde olması ile emrinde çalışan birinin uhdesinde olmasının farkı yoktur. Nitekim olayın bütünlük içerisinde değerlendirildiğinde TOK, emrindekiler ile genel anlamda beraber hareket etmiş, onların davranışları onun hareket etmesini ve karar almasını kolaylaştırmıştır. Nihayetinde telefonun içerisinde bulunan bilgilerin silinip tekrardan şoföre bırakılması da Türkiye'de mahkemede Eylem Tok'a yöneltilecek bir soru olabilecektir. Başka bir anlatımla, şoförleri ve asistanları şüphelilerin maiyetinde çalışan emir ve talimatlarını uygulayan kimselerdir. TOK'un uhdesinde olması ile emrinde çalışan birinin uhdesinde olmasının farkı ancak yargılama neticesinde ortaya çıkacaktır. Nitekim olay, bir bütün olarak değerlendirildiğinde TOK, emrindekiler ile genel anlamda beraber hareket etmiş, şoför ve asistanlarının davranışları onun hareket etmesini ve karar almasını kolaylaştırarak kolluk ve yargı makamlarının olaya etkin ve hızlı bir şekilde müdahale etmesini engellemiş nihayetinde yurt dışına çıkış yasağı dahi konulamadan Mısır'a ve ABD'ye suç işledikten sonra kaçmışlardır. Bunlara ek olarak Tok emrinde çalışan birinin beyanı ile Türk yargısı hareket edemez. Common Law dan ayrılan bir yönü ile Kara Avrupası hukuk sisteminde Hâkimler maddi gerçeğin ortaya çıkmasını sağlayan delillerin dışında vicdani kanaatlerine göre karar verirler.

Eylem Tok'un Mağdur      I.G.      e ait cep telefonunu, içerisinde kazaya ilişkin bir delil olabileceği kanaatiyle ve delilleri gizlemek maksadıyla uhdesine aldığı, tanık beyanlarıyla ispatlanmıştır. TOK'un 281'in yargılaması için yeterli olan yeterli şüphe aşamasına ulaşıldığı görülmektedir.

Telefonun en son Eylem Tok'ta olduğu ve onun tarafından      T.C.      n şoförü Adem Kızıltepe'nin kullandığı araca bırakıldığı sabittir. Böylece Eylem Tok'un delil niteliğinde olabilecek olan bu telefonu alıp      T.C.      ın şoförü Adem Kızıltepe'ye vererek suç delillerini yok etme, gizleme veya değiştirme suçunu da işlediği düşünülmektedir.

Bu kapsamda Eylem Tok, olayda oğlunu kaçırma dışında delil olarak ancak ve sadece cep telefonuna ulaşabilmiş, telefonda kendince aleyhe olabilecek delil durumunu kontrol ettikten sonra telefonun iade süreci gerçekleşmiştir. Bu aşamada suç zaten oluşmuştur.

Ayrıca Eylem Tok verecekleri ifade konusunda da tanıkları yönlendirdiği gibi olay yerine gönderdiği ikinci bir arabayla tanıkları olay yerinden uzaklaştırmıştır. Eylem TOK'un tanıkları olay yerinden uzaklaştırması bile bir delili gizlemek şeklinde nitelendirilmelidir. Zira sıcağı sıcağına alınan bir beyan ile olayın soğumasından sonra alınan bir beyan farklı olabilmektedir. Bunu ne için yaptığının kendisine Türk Mahkemelerinde sorulması gerekmektedir.

Aynı olayla alakalı haklarında soruşturma yürütülen Ayşe Ceren Saltoğlu, Bülent Cihantimur, Adem Kızıltepe beyanlarında Eylem Tok'un yurt dışına kaçma planından kendilerine bahsetmediklerini, meydana gelen trafik kazası sonrası oğlu      T.C.      u hastaneye götürüp sonrasında Bülent Cihantimur'un evine geçeceklerini düşündüklerini, Eylem Tok ile bu şekilde konuşulduğunu beyan etmişlerdir. Eylem Tok kazanın meydana geldiği andan itibaren oğlu      T.C.      yurt dışına hızlıca kaçırmaya çalışmıştır. Bu süreçte de delil olarak değerlendirdiğimiz telefonunun polis ya da insanlar tarafından bulunmasını kaçış anına kadar engellemiştir. Aynı zamanda olay günü karşılaştığı herkesi, iradelerini ve beyanlarını etkileyecek şekilde farklı davranışlarda bulunmaya yöneltmiştir. Buradan anlaşılacağı üzere Eylem Tok'un tüm eylemleri suç delillerini yok etme veya en azından yurt dışına çıkana kadar kolluk ve yargı makamlarının eline geçmesinin engellenmesi olduğu açıktır.

Eylem Tok'un kazanın başından beri oğlunu kaçırmaya çalışması salt olarak olayın failini ortadan kaldırmaya yönelik değil, kazada araç şoförü olan      T.C.      üzerinden kusur durumunu etkileyecek alkol tespiti vs. gibi diğer tespitlerin de yapılmasını engellemeye yönelik olduğu açıktır.

Cep telefonunda kazanın oluşumuna ilişkin herhangi bir tespit ya da şüphelinin kusur durumuna ilişkin herhangi bir mesajlaşma olup olmadığının incelemesi devam etmektedir. Eylem Tok'un olay esnasında delillerle sabit olan eylemleri bir arada düşünüldüğünde seçimlik hareketli olan suç delillerini gizleme, değiştirme ve yok etme suçu ile suçluyu kayırma suçlarını işlediği sabittir.



2. **TCK 283 maddesinde düzenlenen suçluyu kayırma suçu açısından:**

Madde metni ihtiyaten tekrar aşağıda dikkatinize sunulmuştur.

**Suçluyu kayırma Madde 283-** (1) Suç işleyen bir kişiye araştırma, yakalanma, tutuklanma veya hükmün infazından kurtulması için imkân sağlayan kimse, altı aydan beş yıla kadar hapis cezası ile cezalandırılır. 26/6/2009 tarihli ve 5918 sayılı Kanunun 5 inci maddesiyle birinci fıkradan sonra gelmek üzere ikinci fıkra eklenmiş ve diğer fıkralar buna göre teselsül ettirilmiştir.

(2) Bu suçun kamu görevlisi tarafından göreviyle bağlantılı olarak işlenmesi halinde, verilecek ceza yarı oranında artırılır.

(3) Bu suçun üstsoy, altsoy, eş, kardeş veya diğer suç ortağı tarafından işlenmesi halinde, cezaya hükmolunmaz.

Bu suçtan yapılacak bir yargılamada kişinin lehine ve aleyhine olan tüm olgular, dosyadaki tüm delillerin ortaya konulması ve tartışılmasını zorunlu kılmaktadır. Bununla birlikte tanıkların, bilirkişi raporlarının ve sanığın kamuya açık ve şeffaf yapılacak bir duruşmada dinlenmesi, beyan ve bilgilerin irdelenmesi suretiyle adil bir yargılama sonucunda gerçeğin ortaya çıkarılmasına çalışılacağı tüm kamuoyunun beklentisidir. Bu da ancak bağımsız mahkeme ve yargıç tarafından maddi gerçeğin ortaya çıkmasını sağlayacak tüm delillerin değerlendirilmesi ve bununla beraber hatta bu değerlendirme sürecinin tamamını kapsayacak şekilde vicdani kanaatinin hâsıl olması ile kaimdir. Neticeten yasanın Lafzından anlaşılacağı üzere TOK'a verilebilecek cezanın üst sınırı 5 yıldır. Eylem Tok'un mahkeme önünde anne olduğu Türk hukukuna göre tespit ve tevsik edilmeli, hatta soruşturmada anne olduğu ispat edilse dahi güvenlik tedbirlerine hükmedilmesinde bir mani bulunmamaktadır.

Hâkim ve mahkemenin cezanın sınırını belirlemede takdir hakkı bulunmaktadır. Bu açıdan sanığın mahkemede bulunması "Yüzyüzelik ilkesi" açısından ayrıca önem arz etmektedir. Netice olarak yargılama sonucunda hangi karar verilirse verilsin, ne tür ceza verilirse verilsin yargılamanın sonucunda sanığın işlemiş olduğu suç ile bozduğu kamu düzeninin tekrar tesisi için yargılamanın bağımsız bir mahkeme önünde sanık dâhil tüm unsurlarıyla birlikte hazır edilmek suretiyle yapılması bir zorunluluktur.

Bu yönüyle suç delillerini gizleme, değiştirme ve yok etme yönünden deliller, suçluyu kayırma suçu kapsamındaki delillerle bağlantılı olması her iki suçtan da Eylem Tok'un hukuki durumunun Türk adli mercilerince değerlendirilmesi, hakkında soruşturma ve kovuşturma yürütülmesi için iadesini zorunlu kılmaktadır.

5271 sayılı CMK'nın "duruşmanın sona ermesi ve hüküm" kenar başlıklı 223. Maddesinin birinci fıkrasında; duruşmanın sona erdiği açıklandıktan sonra hüküm verileceği düzenlenmiş, Beraat, ceza verilmesine yer olmadığı, mahkûmiyet, güvenlik tedbirine hükmedilmesi, davanın reddi ve düşmesi kararı bir hüküm olarak kabul edilmiştir. Maddenin İkinci fıkrasında; Beraat kararının;

a) Yüklenen fiilin kanunda suç olarak tanımlanmamış olması,

b) Yüklenen suçun sanık tarafından işlenmediğinin sabit olması,

c) Yüklenen suç açısından failin kast veya taksirinin bulunmaması,

d) Yüklenen suçun sanık tarafından işlenmesine rağmen, olayda bir hukuka uygunluk nedeninin bulunması,

e) Yüklenen suçun sanık tarafından işlendiğinin sabit olmaması,

Hallerinde verileceğinin düzenlendiği,

Anılan maddenin 4.fıkrasında;

İşlenen fiilin suç olma özelliğini devam ettirmesine rağmen; faile ceza verilmemesi hallerinde, aşağıda belirtilen durumlarla sınırlı olmak üzere ceza verilmesine yer olmadığı kararı verilebileceği düzenlenmiştir. Bu durumlar:

a) Etkin pişmanlık,

b) Şahsi cezasızlık sebebinin varlığı,

c) Karşılıklı hakaret,

d) İşlenen fiilin haksızlık içeriğinin azlığı halleridir.

Maddenin 5.fıkrasında ise Yüklenen suçu işlediğinin sabit olması halinde, sanık hakkında mahkûmiyet kararı verileceği düzenlenmiştir.

Yukarıda belirtilen karar türlerini belirleme tamamen yargılamayı yapan hâkimin takdir yetkisindedir.

Somut olayda; şahsi cezasızlık sebeplerinden birinin varlığı nedeniyle kişiye ceza verilememesi de bir yargılama faaliyetidir. Yine aynı şekilde söz konusu sebeplerden birinin varlığı soruşturma engeli olarak kanunda sayılmamaktadır hatta cezasızlık sebebinin varlığı halinde Cumhuriyet Savcısı soruşturmayı tamamlayıp dava açacaktır. Sadece mahkemece yapılan yargılama sonucunda böyle bir karar verilebilir. Cumhuriyet Savcısına ceza verilmesine yer olmadığına dair karar verme hakkı tanınmamıştır. Ceza Muhakemesi Kanununun 194. maddesinin ikinci fıkrasında; sanık hakkında, toplanan delillere göre mahkûmiyet, ceza verilmesine yer olmadığı ve güvenlik tedbiri dışında bir karar verilmesi gerektiği kanısına varılırsa, sorgusu yapılmamış olsa da davanın yokluğunda bitirilebileceği hükme bağlanmıştır. Buradan da anlaşılacağı üzere ceza verilmesine yer olmadığına dair karar "beraat" kararı gibi sanığın yokluğunda dahi verilebilen bir karar değildir. Hatta mahkûmiyet kararı verilebilmesi için aranan "sanığın dinlenmesi, sorgusunun yapılmış olması" şartı ceza verilmesine yer olmadığına dair kararda da aranmıştır. Kanunda şahsi cezasızlık sebebinin sonucu olarak düzenlenen ceza verilmesine yer olmadığına dair karar bir soruşturma ve kovuşturma engeli olarak görülmemiştir ve mahkemece "beraat" kararı verilir şeklinde düzenlenmemiştir. Ayrı bir karar olarak düzenlenen bu karar ile alakalı CMK'nın 223. maddesinin 9 uncu fıkrasında; derhâl beraat kararı verilebilecek hâllerde durma, düşme veya ceza verilmesine yer olmadığı kararı verilemez şeklindeki düzenleme de beraat ile ceza verilmesine yer olmadığına dair kararın ayrı hukuki sonuçlar doğuran farklı mahiyette kararlar olduğunu göstermektedir. Yargıtay 8.Ceza Dairesinin 2022/3169 Esas, 2024/2005 karar sayılı ilamında da ceza verilmesine yer olmadığına karar verilirken duruşma açılıp taraflar çağırılarak yapılacak delil değerlendirmesi sonucunda karar verilmesi gerektiği, dosya üzerinden böyle bir karar verilemeyeceği hükme bağlanmıştır.

Bu nedenlerle yapılacak yargılama sonucunda şahsi cezasızlık sebebi sonucunda verilen ceza verilmesine yer olmadığına dair kararın mahkemece verilen beraat kararı ya da Cumhuriyet Savcısı tarafından verilen kovuşturmaya yer olmadığına dair kararla benzerlik göstermemektedir.

Zira şahsi cezasızlık sebepleri eylemin haksızlık içeriğini ortadan kaldırmamakta kişinin yargılamada sahip olduğu bazı şahsi unsurlar sebebiyle eylemi haksızlık teşkil etse bile ceza almamasına sebebiyet vermektedir.

Olayda Eylem Tok hakkında Türk Ceza Kanunu'nun 283. maddesinde düzenlenen suçun unsurları oluşmuştur. Eylem Tok hakkında kamu davası açmaya ve yargılama yapılmasına engel hiçbir hukuki durum da bulunmamaktadır.

TCK m. 283/3'te şahsi cezasızlık sebebi düzenlenmiştir. Şahsi cezasızlık sebepleri, suçun haksızlık niteliğini ortadan kaldırmaz. Ortada yine bir suç mevcuttur ve sanığın yargılanması gereklidir. Şahsi cezasızlık sebepleri hukuka uygunluk nedenleri değildir ve eylemi hukuk dünyasında başlangıçtan itibaren hukuka uygun kılmazlar.

Dolayısıyla şahsi cezasızlık sebepleri double criminality ilkesi bakımından bir engel teşkil etmeyecektir.

Bununla birlikte şahsi sebebin ne şekilde uygulanacağının belirlenmesi Türk mahkemeleri tarafından yapılacak bir yargılamanın sonucunda belli olacaktır. Bu açıdan soruşturma veya kovuşturmaya engel nedenler değildirler. Şahsi cezasızlık sebeplerinin varlığı halinde soruşturma veya kovuşturma yapılabilir.

TCK m. 283/3 bir ceza normu değildir. Söz konusu düzenleme Anayasa m. 38/5'de yer alan hiç kimsenin kendisi veya yakınları aleyhinde delil göstermeye zorlanamayacağı ilkesinin bir görünümüdür. Söz konusu ilke evrensel hukukta nemo tenetur re ipsum accusare olarak da bilinmektedir.

TCK m. 283/1 ceza normudur ve cezanın ilgili düzenlemeye bakılarak belirlenmesi gereklidir. Başka bir deyişle cezanın belirlenmesi açısından uygulanması gerekli madde TCK m. 283/1'dir. Sonuç olarak da, Türkiye ile ABD arasındaki iade anlaşması gereğince çifte cezalandırılabilirlik ve iade edilebilirlik tespiti yapılırken yalnızca 283/1 fıkrasının dikkate alınması gerekecektir.

TCK m. 283/3 sadece olayımızda olduğu gibi daha önceki suçu işleyen kişi ile TCK m. 283'ün faili arasında kanunda gösterildiği gibi bir ilişki olduğu zaman uygulanabilir.

Eylem Tok'un üzerine atılı suçlar yönünden de hakkında herhangi bir tutuklama yasağı söz konusu değildir. Ceza Muhakemesinin 100. maddesinin dördüncü fıkrasında; "Sadece adlî para cezasını gerektiren suçlarda veya vücut dokunulmazlığına karşı kasten işlenenler hariç olmak üzere hapis cezasının üst sınırı iki yıldan fazla olmayan suçlarda tutuklama kararı verilemez." şeklinde düzenlenen hüküm ile tutuklama kararı verilemeyecek haller sayılmıştır. Şahsi cezasızlık sebebi ise tutuklama yasağı olan hallerden sayılmamıştır. Eylem Tok hakkında yürütülen her iki suçun da hapis cezası sınırı açısından da tutuklanmasına engel bir durum yoktur.

Eylem Tok hakkında hiçbir tutuklama yasağı bulunmamakta olup hatta tutuklama sebebi sayılabilecek çok sayıda eylemi gerçekleştirmiştir. Şöyle ki CMK'nın 100. maddesinin ikinci fıkrasında; şüpheli veya sanığın kaçması, saklanması veya kaçacağı şüphesini uyandıran somut oluşların olması; şüpheli veya sanığın davranışları; delilleri yok etmesi, gizlemesi veya değiştirmesi; tanık, mağdur veya başkaları üzerinde baskı yapılması girişiminde bulunması hususlarında kuvvetli şüphe oluşması halinde tutuklama nedeni sayılacağı ve tutuklama kararı verilebileceği düzenlenmiştir. Önceki açıklamalarımızda da izah ettiğimiz şekilde şahıs

olaydan hemen sonra yurt dışına kaçmıştır, delilleri yok etmeye çalışmış ve başkaları üzerinde baskı yapma girişimleri olmuştur.

İzah edilen sebeplerle Eylem Tok belirtilen iki suçu da işlemiştir. Hakkında tutuklama yasağına engel hiçbir durum bulunmamaktadır. Eylem Tok'un işlediği suç delillerini gizleme, değiştirme ve yok etme suçu yönünden deliller, suçluyu kayırma suçu kapsamındaki delillerle bağlantılı olması her iki suçtan da Eylem Tok'un hukuki durumunun Türk adli mercilerince değerlendirilmesi, hakkında soruşturma ve kovuşturma yürütülmesi için iadesini zorunlu kılmaktadır.

Sonuç olarak, ikili antlaşmanın 2. maddesi delaleti ile iade yargılamasına geçilmesi ve bu yargılama sürecinde 9. maddesinin uygulanarak şüphelinin tutukluğunun devamı beklenilmekte olup; iade yargılamasında antlaşma hilafına aykırı, genişletici yorum benimsenecek şekilde işin esasına geçilmesinin mevcut uygulamaya ve iade hukukuna dair uluslararası teamüllere aykırı olacağı, bu görüşün aksinin kabulü halinde, iade yargılamasını yapan mahkemelerin, iadeye konu olan tüm suçları; beraat, düşme vb gibi ihtimaller öngörerek iadesine karar vermeyebileceği, böyle bir değerlendirmenin ise iade hukukun doğasına aykırı olacağı açıktır.

Serra GAKAR SALMANİ
Cumhuriyet Sarcısı 171286



**OUR OFFICIAL RESPONSE ABOUT EYLEM TOK**

On 01.03.2024, at around 23:20 p.m., while        T.C.        the son of Eylem Tok, was driving a Porsche Taycan 4S model car with the license plate number 34 EGG 06, he entered a curve at excessive speed and slid the vehicle. (The vehicle is registered in the name of Timur Media Limited Company, which belongs to the father of        T.C.        , the former husband of Eylem Tok.) In the meantime,        O.M.A.        S.K.        I.G.  ,        H.T.        and        T.A.        , who were stopping on the side of the road because their vehicles were broken down, were hit and the traffic accident occurred. The accident was reported to the ambulance and police by passing citizens.

    O.M.A.        died and other people were injured due to the accident.

The suspect Eylem Tok had no role in the occurrence of the traffic accident. However, Eylem Tok, who was informed immediately after the accident, arranged for        T.C.        to flee first to Egypt and then to the United States of America in order to prevent any judicial proceedings against him. Eylem Tok is currently in the United States of America together with        T.C.        . Eylem Tok arrived at the scene of the accident after learning about the accident. It was proven by the witness statements that Eylem Tok took the cell phone belonging to the victim        I.G.        in order to conceal the evidence and in the belief that it might have contained evidence of the accident. (This incident will be explained in detail below.)

It was proven that Eylem Tok had the phone last and that it was left by her in the car driven by Adem Kızıltepe,        T.C.        's driver. Thus, Eylem Tok took this phone, which could be in the nature of evidence, and gave it to Adem Kızıltepe,        T.C.        's driver.

Eylem Tok and        T.C.        were caught and arrested in the United States of America as a result of our *extradition* request.

Eylem Tok committed the offences of Destroying, Concealing or Altering Evidence and Protecting the Offender, regulated in the Articles 281 and 283 of Turkish Penal Code respectively.

1. **In terms of the offence of Destroying, Concealing or Altering Evidence in the Article 281 of Turkish Penal Code:**

    The offence of Destroying, Concealing or Altering Evidence in the Article 281 of Turkish Penal Code is enacted in the Part Two, titled Offences against the Judicial Bodies or Court, within the Chapter Three, titled Offences against the Nation and the State, as follows:

*"(1) Any person who destroys, erases, alters, conceals, or damages evidence of an offence in order to prevent the emergence of the truth shall be sentenced to a penalty of imprisonment for a term of six months to five years. No penalty shall be imposed where a person conducts such an act in relation to an offence he has committed or participated in.*
*(2) Where this offence is committed by a public officer in the course of his duty, the penalty to be imposed shall be increased by one-half.*

İşbu tercüme tarafımdan aslına uygun olarak tercüme edilmiştir.

*The translation is true, accurate and correct to the best of my knowledge and ability.*
Betül DEMİR
Yeminli Mütercim | *Certified Translator*

*(3) Where a person submits evidence of an offence, which had been concealed by him, before judgment is passed regarding such offence, the penalty to be imposed according to this Article shall be reduced by four-fifths."*

When the justification of the article is examined; the subject of this offence is *the evidence and elements of an offence that was previously committed.* The property acquired from an offence must also be considered as the elements and evidence of the offence. In this respect, the offence in question requires the existence of a previously committed offence.

The offence in question is an optional offence and the execution of more than one act is necessary for the offence to occur. These optional acts consist of the destroying, erasing, concealing, altering or corrupting of the evidence and elements of the offence.

To constitute this offence, the perpetrator must act with the intent to prevent the truth from being revealed exactly or to prevent the truth from being revealed to the desired extent.

The offence of destroying, concealing or altering evidence may have been committed against the evidence itself, the value obtained from the offence, or some elements of the offence that would affect the perpetrator's culpability and the amount of penalty to be imposed on the perpetrator based on this. Preventing the taking of video footage of the scene of the accident, preventing the video recording of the perpetrators of the accident/incident, TOK's behavior at the scene of the incident, TOK's actions to ensure that his son and the driver of the other vehicle escape from the scene of the incident, preventing the recording of the evidence of the incident and preventing the provision of rapid and accurate information to the police regarding the incident, and preventing an alcohol examination in the accident, where there are signs that the perpetrator was under the influence of alcohol, by enabling him to escape, are all clear examples of the commission of the acts by TOK under the Article 281 of Turkish Penal Code.

In the offence of causing death by negligence, the determination of the fault of the perpetrator and the damage caused are important and essential in terms of punishing the perpetrator and determining the amount of the penalty.

While the damage caused after the accident can be detected with evidence such as crime scene investigation, eyewitness reports, photographs, camera footage; in the determination of the fault of the perpetrator, the speed of the vehicle, the state of attention, the will to brake and stop can be detected with material evidence or witness statements. However, some detections based on the perpetrator in person, such as whether the perpetrator was intoxicated during the accident, are possible only through the examination to be made exclusively on the perpetrator.

İşbu tercüme tarafımdan aslına uygun olarak tercüme edilmiştir.

*The translation is true, accurate and correct to the best of my knowledge and ability.*
Betül DEMİR
Yeminli Mütercim | *Certified Translator*

B. Demir

In Turkish Criminal Law and its practice, the act of driving under the influence of alcohol will cause the perpetrator to be punished at a higher rate by increasing the fault of the perpetrator from simple negligence to conscious negligence.

In the paragraph 3 of the Article 22 of Turkish Penal Code, it is stated as follows: *"An act is conducted with conscious negligence when the result is foreseen but is not desired; in this case, the penalty for the negligent offence shall be increased by one-third to one-half."* Accordingly, the penalty of the perpetrator may be increased by up to half.

In the Article 61 of the afore-mentioned Law, it is stated as follows:
*"In a particular case, the judge shall determine the basic penalty, between the minimum and maximum limits of the offence as defined by law, by considering the following factors:*
*a) the manner in which the offence was committed;*
*b) the means used to commit it;*
*c) the time and place where the offence was committed;*
*d) the importance and value of the subject of the offence;*
*e) the gravity of the incurred damage or danger;*
*f) the gravity of fault relating to the intent or negligence of the offender;*
*g) the object and motives of the offender."*

The increase in the penalty for offences committed with probable intent or conscious negligence shall be calculated over the penalty determined according to the provisions of paragraph one.

The offence of causing the death of one person and injury to more than one person by negligence, as stipulated in the second paragraph of the Article 85 of Turkish Penal Code, which        T.C.        is charged with, is subject to a penalty of imprisonment from 2 to 15 years for the perpetrator of the offence.

As such, the interference with the evidence regarding the fault of the perpetrator has important and different consequences for the amount of penalty to be imposed on the perpetrator.

In the concrete case; Eylem Tok took away her son        T.C.        , the perpetrator of the accident, from the scene of the accident. She destroyed some important evidence that would significantly affect the fault status of the perpetrator regarding the accident, and took actions to influence the statements, including witnesses.

Due to the fact that        T.C.        was taken away after the accident, it was not possible to examine alcohol tests etc. on the suspect of the incident.

Immediately after the accident,        T.C.        called his driver Adem Kızıltepe and his mother Eylem Tok. Eylem Tok first went to the accident scene with her employee

İşbu tercüme tarafımdan aslına uygun olarak tercüme edilmiştir.

*The translation is true, accurate and correct to the best of my knowledge and ability.*
Betül DEMİR
Yeminli Mütercim | *Certified Translator*

Ayşe Ceren Saltoğlu and took        T.C.        ,        D.O.O.        and
A.K.        away to their homes. The afore-mentioned persons left the accident scene without reporting the accident to the law enforcement units or the paramedics.

A person named Samet Korkmaz stated that he saw the accident while he was driving his car with the license plate number 34 GP 5370. He stated that one of the injured persons said to him "someone took my phone".

Samet Korkmaz stated that he did first aid to the injured persons and called 112 emergency units to report the accident and waited for 112 emergency units to arrive.

After learning about the accident, Eylem Tok also called her ex-husband Bülent Cihantimur and told him to come home. Then, Bülent Cihantimur immediately went to the residence of Eylem Tok and        T.C.        .

Adem Kızıltepe, Ayşe Ceren Saltoğlu and        D.O.O.        confirmed in their statements that  T.C.  called Eylem immediately after the accident and that Eylem came to the accident scene and took  T.C.  and his friends to their home.

Afterwards, according to the statements of Adem Kızıltepe, Eylem Tok picked up Adem Kızıltepe and went back to the scene of the accident. It is understood that she went to the scene of the incident within the above-mentioned plan in order to determine the evidence, which could be against her son, at the scene of the incident and, if necessary, to hide and conceal them by intervening in them. However, when she saw the police officers, she immediately returned to her residence. At this point, there is a much stronger suspicion than the suspicion, which is sufficient for investigation and prosecution.

The victims        T.A.        and        I.G.        claimed that their cell phones were taken from the scene of incident.        D.O.O.        Z.H.D.        and K.A. stated that one of the victims gave his phone to        Z.H.D.        to look at his head wound using the flash light.        Z.H.D.        confirmed this and stated that he took the phone and helped the victim; that he absently put the phone in his pocket; that when he returned to where they lived, he realized that he had the phone with him; that he gave the phone to        K.A.        who was going to return to the scene of incident, to return it to the victim; and that  K.A.  gave the phone to the security guards where they lived (in the site). It was determined that the phone given to        Z.H.D.        was the phone belonging to I.G.        one of the victims. There was no evidence that        T.A.        s phone was taken or lost at the scene of the incident.

Adem Kızıltepe,        Z.H.D.        Berna Öcalgiray, Ayşe Ceren Saltaoğlu stated that Eylem Tok took the phone from the security guards. The security guards said that they gave the phone to Berna Öcalgiray. There is a brief moment of a phone exchange in the camera footage; however,        D.O.O.        Adem Kızıltepe, who was the driver of

İşbu tercüme tarafımdan aslına uygun olarak tercüme edilmiştir.

*The translation is true, accurate and correct to the best of my knowledge and ability.*
Betül DEMİR
Yeminli Mütercim | *Certified Translator*

Eylem Tok and      T.C.      , and Ayşe Ceren Saltoğlu, an employee and acquaintance of Eylem Tok, stated that Eylem Tok took the phone from the security guards, saying that she "knew the owner and would give it to him". As it can be understood from this, it is clearly stated, within the scope of the investigation, that Eylem Tok took evidence, which may contain many photographs and videos of the accident scene.

Berna Öcalgiray, her brother Selim Abra, her son      D.O.O.      's driver İbrahim Boz also stated in their statements that when Berna Öcalgiray gave her name and number to the security guards, Eylem Tok reacted to her by saying "why are you giving your name and number, I wish you hadn't". These words, which were said by Eylem Tok, are almost an expression of the intention of the suspect. It is clear that she did not consent to the sharing of even a small amount of personal information with security guards.

Eylem Tok took the phone from where it was last found and got into the car driven by the driver Adem Kızıltepe and went away. It is proven that the phone fell into the hands of Eylem Tok in this way. Because the phone was last found in the vehicle, which Eylem Tok got into and which was being driven by Adem, the driver. Eylem Tok left the phone in the vehicle before fleeing abroad.

After Eylem Tok left the country and it was revealed by witness statements that she had taken the cell phone; a few days after the incident, the cell phone was found by ( T.C.   's driver Adem Kızıltepe and handed over to the law enforcement officers through him. Their drivers are the people, who work under them and carry out their orders and instructions; there is no difference between being in the possession of TOK and being in the possession of someone working under her. As a matter of fact, when the incident is evaluated as a whole; TOK acted together with her subordinates in general, and their behaviors facilitated her actions and decision-making. Eventually, the deletion of the information contained in the phone and its return to the driver could also be a question to be asked to Eylem Tok in a Turkish court. In other words, the drivers and assistants are the people, who work under the suspects and carry out their orders and instructions. The difference between being in the possession of TOK and being in the possession of one of her subordinates will only emerge as a result of the trial. As a matter of fact, when the incident is evaluated as a whole, TOK acted together with her subordinates in general, and the behaviors of her driver and assistants made it easier for her to act and take decisions, preventing the law enforcement officers and the judicial authorities from intervening effectively and quickly in the incident; and finally, they fled to Egypt and the USA after committing offences without even being banned from leaving the country. In addition, the Turkish judiciary cannot rule solely on the statements of a person, working under Tok. In the Continental European legal system, which differs from the Common Law, the judges decide according to their personal conviction, apart from the evidence that helps to reveal the material truth.

İşbu tercüme tarafımdan aslına uygun olarak tercüme edilmiştir.

*The translation is true, accurate and correct to the best of my knowledge and ability.*
Betül DEMİR
Yeminli Mütercim | *Certified Translator*



It was proven with witness statements that Eylem Tok took possession of the cell phone belonging to the victim      I.G.      with the belief that it might contain evidence of the accident and with the intention of concealing the evidence. It is seen that it is reached to the stage of sufficient suspicion, which is sufficient for the trial of TOK under the Article 281 of Turkish Penal Code.

It was proven that Eylem Tok had the phone last and that it was left by her in the car driven by Adem Kızıltepe,      T.C.      's driver. Thus, it is thought that Eylem Tok also committed the offence of destroying, concealing or altering the evidence of an offence by taking this phone, which could be in the nature of evidence, and giving it to Adem Kızıltepe,
      T.C.      's driver.

In this context, Eylem Tok was only able to access the cell phone as evidence other than taking away her son; and after checking the phone for evidence that could be against her, the phone was returned. At this stage, the offence was already committed.

Furthermore, Eylem Tok not only guided the witnesses in terms of the statements they were to give, but also sent a second car to the scene of the incident and drove the witnesses away from the scene. Even the fact that Eylem TOK took the witnesses away from the scene of the incident should be characterized as concealing evidence. This is because a statement, taken in the heat of the moment, may be different from a statement, taken after the incident has cooled down. She should be asked in Turkish Courts why she did this.

In their statements, Ayşe Ceren Saltoğlu, Bülent Cihantimur, Adem Kızıltepe, who are being investigated in relation to the same incident, stated that Eylem Tok did not tell them about her plan to flee abroad, that they thought she would take her son      T.C.      to the hospital after the traffic accident and then go to Bülent Cihantimur's house, and that this was how they talked to Eylem Tok. From the moment the accident occurred, Eylem Tok tried to escape with her son      T.C.      abroad quickly. In this process, she prevented the police or people from finding the cell phone, which we consider as evidence, until the moment of escape. At the same time, she directed everyone, whom she encountered on the day of the incident, to engage in different behaviors in a way to affect their wills and statements. As it can be understood from this, it is clear that all of Eylem Tok's actions were aimed at destroying the evidence of the offence or at least preventing it from being found by the law enforcement officers and the judicial authorities, until she left the country.

It is clear that Eylem Tok's attempt to escape with her son since the beginning of the accident was not only aimed at eliminating the perpetrator of the incident, but also to prevent other determinations such as alcohol examination etc., which would affect the fault status of
      T.C.      , the driver of the vehicle during the accident.

İşbu tercüme tarafımdan aslına uygun olarak tercüme edilmiştir.

*The translation is true, accurate and correct to the best of my knowledge and ability.*
Betül DEMİR
Yeminli Mütercim | *Certified Translator*



The examination of whether there is any determination regarding the occurrence of the accident or whether there is any messaging regarding the suspect's fault status on the cell phone is ongoing. By considering the actions of Eylem Tok, which were proven by the evidence during the incident, it is certain that she committed the offences of concealing, altering and destroying the evidence of the offence and protecting the offender.

2. **In terms of the offence of Protecting an Offender in the Article 283 of Turkish Penal Code:**

The text of this article is submitted for your information again below.

**Protecting an offender**

**Article 283 -** (1) Any person who provides an offender with the opportunity to avoid a search, his detention or arrest, or the enforcement of a judgment against him shall be subject to a penalty of imprisonment for a term of six months to five years.

(2) Where this offence is committed by a public officer in connection with his duty, the sentence to be imposed shall be increased by one-half.

(3) Where the offence is committed by a direct-ascendant, direct-descendant, spouse, sibling or an accomplice to the offence, no penalty shall be imposed.

In a trial for this offence, all the facts in favor of and against the person, all the evidence in the file must be put forward and discussed. In addition, it is the expectation of the entire public opinion that the truth will be revealed as a result of a fair trial by hearing of the witnesses and the defendant in a public and transparent trial, and by examining the expert reports and the statements and the information. This is only possible, if the independent court and judge evaluate all the evidence that will reveal the material truth and, in addition to this, reaches an opinion that covers the entire evaluation process. Consequently, as can be understood from the wording of the law, the upper limit of the penalty that can be imposed on Tok is 5 years.

According to Turkish law, Eylem Tok's status as a mother must be established and certified before the court; and even if it is proven in the investigation that she is a mother, there is no obstacle to the imposition of security measures.

The judge and the court have the right of discretion in determining the limit of the sentence. In this respect, the presence of the defendant in the court is also important in terms of the "Face to Face Principle". As a result, no matter which decision is rendered at the end of the trial, and no matter what kind of penalty is given; it is a necessity that the trial be held before an independent court with all its elements, including the defendant, in order to restore the public order, which the defendant has disrupted with the offence committed by him.

İşbu tercüme tarafımdan aslına uygun olarak tercüme edilmiştir.

*The translation is true, accurate and correct to the best of my knowledge and ability.*
Betül DEMİR
Yeminli Mütercim | *Certified Translator*



In terms of the offence of concealing, altering and destroying the evidence of the offence, the fact that the evidence is linked to the evidence within the scope of the offence of protecting the offender makes the extradition of Eylem Tok necessary for the Turkish judicial authorities to evaluate her legal status and to carry out investigation and prosecution about her due to both offences.

The Article 223 of the Criminal Procedure Law No. 5271, titled "termination of the trial and judgment", stipulates in the first paragraph that a judgment shall be rendered after the end of the trial is announced. The decisions of acquittal, not to impose a penalty, conviction, imposition of a security measure, refusal and dismissal of the case are accepted as a judgment.

The second paragraph of the Article stipulates that the decision of acquittal shall be granted in the following circumstances:

a) The imputed act is not defined as an offence in the law.

b) It is proven that the imputed offence was not committed by the defendant.

c) There is no intent or negligence on the part of the perpetrator in terms of the imputed offence.

d) Although the imputed offence was committed by the defendant, there is a reason of lawfulness in the incident.

e) It is not proven that the imputed offence was committed by the defendant.

In the paragraph 4 of the afore-mentioned article;

Although the committed act continues to be an offence; in cases where the perpetrator is not sentenced, it is stipulated that a decision of not to impose a penalty may be rendered, limited to the following situations. These situations are as follows:

a) Effective remorse,

b) Existence of a personal ground of exemption from punishment,
c) Mutual insult,

d) Where the unjust content of the committed act is low.

Paragraph 5 of the Article stipulates that the defendant shall be convicted, if it is proven that s/he committed the imputed offence.

The determination of the above-mentioned types of decisions is entirely at the discretion of the trial judge.

In the concrete case; the inability to impose a penalty due to the existence of one of the reasons for personal exemption from punishment is also a judicial activity. Likewise, the existence of one of the reasons in question is not listed in the law as an obstacle to investigation, in fact, in the presence of a reason for exemption from punishment, the Public Prosecutor will complete the investigation and file a lawsuit. Only the court can make such a decision as a result of the trial. It does not grant the Public Prosecutor the right to decide that there are no grounds for imposing a penalty. In the second paragraph of the Article 194 of the Criminal Procedure Law, it is stipulated as follows: If it is concluded that a decision other than the decisions of conviction, not to impose a penalty and security measures should be made about the defendant according to the evidence collected, the case may be concluded in

İşbu tercüme tarafımdan aslına uygun olarak tercüme edilmiştir.

*The translation is true, accurate and correct to the best of my knowledge and ability.*
Betül DEMİR
Yeminli Mütercim | *Certified Translator*



his/her absence, even if s/he was not interrogated. As it can be understood from this point, the decision of not imposing a penalty is not a decision that can be made even in the absence of the defendant, like the decision of "acquittal". In fact, the condition of "hearing and interrogation of the defendant", which is required for a decision of conviction, is also required in the decision of not to impose a penalty. The decision of not to impose a penalty, which is regulated in the law as a consequence of personal exemption from punishment, is not considered as an obstacle to investigation and prosecution and is not regulated as a decision of "acquittal" by the court. In the paragraph 9 of the Article 223 of the Criminal Procedure Law regarding this decision, which is regulated as a separate decision; the regulation stating that in cases where a decision of acquittal can be made immediately, a decision of suspension of the proceedings, dismissal or not to impose a penalty shall not be made, indicates that the decision of acquittal and the decision of not to impose a penalty are decisions of a different nature, which have different legal consequences. In the judgment docket numbered 2022/3169 and decision numbered 2024/2005 of 8th Criminal Chamber of the Court of Cassation; it is concluded that when deciding not to impose a penalty, a hearing must be held and the parties must be summoned and a decision must be given as a result of the evaluation of the evidence; and such a decision shall not be given based on the case file.

For these reasons, the decision of not to impose a penalty, rendered due to personal exemption from punishment as a result of the trial, is not similar to the decision of acquittal rendered by the court or the decision of non-prosecution rendered by the Public Prosecutor.

Likewise, the reasons for personal exemption from punishment do not eliminate the unjust content of the act; they cause the person not to be punished, even if his/her act constitutes an injustice due to some personal elements that the person has in the legal proceedings.

In the concrete case, it was constituted the elements of the offence, regulated in the Article 283 of the Turkish Penal Code, against Eylem Tok. There is no legal situation, preventing the filing of a public lawsuit and conducting trial against Eylem Tok.

The reasons for personal exemption from punishment are regulated in the Article 283/3 of the Turkish Penal Code. The reasons for personal exemption from punishment do not eliminate the unjust nature of the offence. There is still an offence and the defendant must be tried. The reasons for personal exemption from punishment are not reasons for compliance with the law and do not render the act lawful from the beginning in the legal world.
Therefore, the reasons for personal exemption from punishment will not constitute an obstacle to the principle of double criminality.

However, the determination of the application of the reasons for personal exemption from punishment will be determined by the outcome of a trial by the Turkish courts. In this respect, they are not obstacles to the investigation or prosecution. The investigation or prosecution may be carried out in the presence of the reasons for personal exemption from punishment.
The Article 283/3 of the Turkish Penal Code is not a criminal norm. This regulation is the reflection of the principle in the Article 38/5 of the Constitution, which stipulates that no one shall be compelled to make a statement that would incriminate himself/herself or his/her legal next of kin, or to present such incriminating evidence. This principle is also known as "nemo tenetur se ipsum accusare" in universal law.

İşbu tercüme tarafımdan aslına uygun olarak tercüme edilmiştir.

*The translation is true, accurate and correct to the best of my knowledge and ability.*
Betül DEMİR
Yeminli Mütercim | *Certified Translator*

The Article 283/1 of the Turkish Penal Code is a criminal norm and the penalty should be determined by examining the relevant regulation. In other words, the article, which should be applied in terms of determining the penalty, is the Article 283/1 of the Turkish Penal Code. As a result, while determining double criminality and extraditability pursuant to the extradition treaty between Turkey and the USA, only the Article 283/1 is required to be taken into account.

The Article 283/3 of the Turkish Penal Code can only be applied when, as in our case, there is a relationship between the perpetrator of the previous offence and the perpetrator of the offence in the Article 283 of the Turkish Penal Code, as indicated in the law.

There is no prohibition of arrest in respect of the offences imputed to Eylem Tok. The following provision in the fourth paragraph of the Article 100 of Criminal Procedure Law lists the circumstances, in which an arrest warrant cannot be issued: "An arrest warrant shall not be issued for the offences, which require only a judicial fine, or for the offences, for which the upper limit of imprisonment sentence is not more than two years, except for the offences committed intentionally against the physical integrity of body." The reason of personal exemption from punishment iis not listed among the circumstances, for which the arrest is prohibited. There is no obstacle to the arrest of Eylem Tok in terms of the imprisonment sentence limit for both offences.

There is no prohibition of arrest for Eylem Tok; and in fact, she committed many acts that can be considered grounds for arrest. Namely, it is stipulated in the second paragraph of the Article 100 of Criminal Procedure Law, as follows: If there are concrete facts for arousing the suspicion that the suspect or accused will flee or hide; and if there is strong suspicion that the suspect or accused is destroying, concealing or altering evidence and attempting to put pressure on witnesses, victims or others, by taking into account the behavior of the suspect or accused; these shall be considered grounds for arrest and an arrest warrant shall be issued. As we have explained in our previous explanations, the person fled abroad immediately after the incident, tried to destroy evidence and attempted to put pressure on others.

For the reasons explained, Eylem Tok committed both offences. There are no circumstances, preventing the prohibition of her arrest. In terms of the offence of concealing, altering and destroying the evidence of the offence; the fact that the evidence is linked to the evidence within the scope of the offence of protecting the offender, makes the extradition of Eylem Tok necessary for the Turkish judicial authorities to evaluate her legal status and to carry out investigation and prosecution about her due to both offences.

In conclusion, it is expected that the extradition proceedings will be initiated through the instrumentality of the Article 2 of the bilateral treaty and that the detention of the suspect will be continued by applying the Article 9 of the bilateral treaty during this extradition proceedings. Examining the merits and adopting an expansive interpretation in the extradition proceedings in violation of the treaty would be contrary to the current practice and the international practices on extradition law. If this view is accepted to the contrary, the courts conducting extradition proceedings may not decide on extradition for all offences subject to extradition, by foreseeing possibilities such as the decisions on acquittal, dismissal, etc. It is clear that such an assessment would be contrary to the nature of the extradition law.

İşbu tercüme tarafımdan aslına uygun olarak tercüme edilmiştir.

*The translation is true, accurate and correct to the best of my knowledge and ability.*
Betül DEMİR
Yeminli Mütercim | *Certified Translator*

