IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF ) | |
| THE EXTRADITION OF ) | No. 24-mj-01365-DLC |
| EYLEM TOK ) | |

**GOVERNMENT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF EXTRADITION**

The United States, through undersigned counsel, respectfully submits this reply memorandum of law in further support of its request that this Court certify to the Secretary of State that Eylem Tok ("Tok") is extraditable to the Republic of Türkiye ("Türkiye") to stand trial on the two offenses for which Türkiye seeks her extradition.

**I.      Tok's conduct is punishable by more than a year in prison.**

In her opposition brief, Tok restates her argument from her motion to dismiss, Dkt. 13, that she is not subject to more than a year in prison on the charge of Protecting an Offender, in violation of Article 283 of the Turkish Criminal Code, because she is T.C.'s mother. Dkt. 143 at 13-18. The government addressed this argument in its opposition to Tok's motion to dismiss and its opening extradition brief. *See* Dkt. 37 at 4-5; Dkt. 83 at 16-17. In her latest brief, Tok does not address Article 2(4) of the Treaty on Extradition and Mutual Assistance in Criminal Matters Between the United States of America and the Republic of Turkey, U.S.-Turk., June 7, 1979, 32 U.S.T. 3111 (the "Treaty"), and thus appears to concede that, even if the Court concludes that she is not subject to more than a year in prison for the offense of Protecting an Offender, Article 2(4) of the Treaty nevertheless permits her extradition on that charge if the Court certifies her extradition on the charge of Destroying, Concealing or Altering Evidence under Article 281 of the Turkish Criminal Code.

Turning to Article 281, Tok claims her potential punishment on that offense would be reduced to a maximum of one year in prison because her son's driver, Adem Kiziltepe, turned the cellphone in question into the police. Dkt. 143 at 18-19. First, whether Mr. Kiziltepe acted as Tok's agent, both as a factual and legal matter under Turkish law, is a question for trial. Dkt. 73-4 at 20 ("The difference between being in possession of TOK and being in possession of one of her subordinates *will only emerge as a result of the trial*."). Second, Tok's claim is an affirmative defense raised in effort to negate her liability, which falls outside the scope of an extradition court's review and is an issue reserved for the Turkish courts. *See, e.g.*, *In re Extradition of Martinelli Berrocal*, No. 17-cv-22197, 2017 WL 3776953, at *27 (S.D. Fla. Aug. 31, 2017) (collecting cases). Third, this argument fails to account for Tok's other actions underlying the Article 281 charge: her removal of T.C. and two of his friends from the scene of the crash, which prevented police from observing and questioning them immediately after the incident and from testing T.C. for alcohol and drug use.

Tok does not suggest that removing T.C. and his friends from the crash scene would receive a lesser sentence, but instead argues that this conduct is not subject to liability under Article 281 at all. Dkt. 143 at 19-20, 32. Yet, in requesting Tok's extradition, Türkiye found that her actions—*both* removing the cellphone *and* removing T.C. and his friends from the scene—violated Article 281. Dkt. 73-4 at 17, 21. Türkiye's interpretation of its own law is entitled to great deference. *Matter of Extradition of Taylor*, 484 F. Supp. 3d 13, 18 (D. Mass. 2020) (Cabell, M.J.) ("'Extradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law,' and American extradition courts therefore have consistently cautioned against doing so….") (quoting *Noeller v. Wojdylo*, 922 F.3d 797, 805 (7th Cir. 2019)); *see also Basic v. Steck*, 819 F.3d 897, 901 (6th Cir. 2016) (refusing to "second-guess" Bosnian government's

determination of what constitutes an arrest warrant); *In re Extradition of Nezirovic*, No. 7:12-mc-39, 2013 WL 5202420, at *15 (W.D. Va. Sept. 16, 2013) ("It would be a grave insult for this court to presume to tell the Government of Bosnia and Herzegovina what is or is not legitimate under Bosnian law.").[1]

Deference to Türkiye's interpretation of its own laws is also consistent with the principle of international comity and "respect for the sovereignty of other nations," *In re Assarsson*, 635 F. 2d 1237, 1244 (7th Cir. 1980), and avoids the risk that a U.S. court might erroneously interpret the law of a foreign country. *Id.* ("The possibility of error warns us to be even more cautious of expanding judicial power over extradition matters."). In *Taylor*, the court noted that Japan twice issued arrest warrants alleging the fugitives' conduct violated a certain provision of the Japanese Penal Code in ruling that deference to Japan's interpretation of its own laws was proper. 484 F. Supp. 3d. at 18. Similarly here, Türkiye has twice stated Tok's conduct violates Article 281—in its initial extradition request and through its supplement directly in response to Tok's motion to dismiss. Dkt. 73-1 to 73-4. Relatedly, Tok also fails to provide any reason why she could not raise her legal challenges to the application of Turkish law during criminal proceedings in Türkiye, should she be extradited there.

Tok makes the additional argument that the cellphone is not "evidence" subject to Article 281. Dkt. 143 at 20, 35-36. For the same reason that the Court should defer to Türkiye's interpretation of Article 281 as to the types of conduct covered by that provision, the Court should likewise defer to Türkiye's conclusion that the cellphone in question sufficiently constitutes evidence that can be destroyed, concealed, or altered. *See, e.g.*, Dkt. 73-4 at 21 ("It was proven

---

[1] For this same reason, the Affidavit of Dr. Aras Türay, Dkt. 143-2, is outside the scope of the Court's review.

with witness statements that Eylem Tok took possession of the cell phone belonging to the victim [I.G.], with the belief that it might contain evidence of the accident and with the intention of concealing the evidence. It is seen that it is reached to the stage of sufficient suspicion, which is sufficient for the trial of TOK under Article 281 of Turkish Penal Code."). Indeed, under Tok's proposed interpretation of Article 281, one who destroys evidence—such as deleting video or photographs off a cellphone—could avoid liability because the materials would no longer be available to establish they were "evidence." This circular thinking makes no sense.

**II.     Tok's conduct is punishable under the laws of the United States and Massachusetts.**

Tok argues that her alleged conduct in taking the cellphone from the security guards and removing T.C. and his friends from the crash scene, such that investigators could not observe their behavior, question them as witnesses, or test T.C. for alcohol or drug usage, does not amount to a felony under federal or state law. Dkt. 143 at 21-27. She is wrong.

In lying to the security guards about knowing the owner of the cellphone and refusing to return the phone when asked, Tok could be charged under 18 U.S.C. § 1512(b)(3) for "knowingly . . . engag[ing] in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." Section 1512(b)(3) was designed to "facilitate federal law enforcement's ability to gather information about possible federal crimes— including federal crimes that are not yet under investigation at the time of the offense." *United States v. Bailey*, 405 F.3d 102, 108 (1st Cir. 2005); *accord United States v. Guadalupe*, 402 F.3d 409, 411 (3d Cir.2005). Tok's actions frustrated the ability of investigators to gather information about the accident, including potential photos or video of the crash on the cellphone, as well as GPS location and acceleration data maintained on the phone, which could show where the victim

was located at the time of impact and the speed at which the victim was thrown. While Tok argues that there is "no allegation that the cellphone contained any information that Tok was trying to keep from authorities," that Türkiye is seeking her extradition based, in part, on her removal of the cellphone shows otherwise. As noted in the government's prior filings, Türkiye is not required to submit its entire file and try its case in U.S. courts. *See* Dkt. 101 at 7 (citing cases), and as discussed *supra*, Türkiye's interpretation of its own laws is entitled to deference.

Tok could also be charged under 18 U.S.C. § 1512(c)(2) in connection with her removal of T.C. and his friends from the crash scene, which prevented investigators from observing their behavior, taking witness statements, and testing T.C. for alcohol or drug consumption, because such conduct "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so." Tok acknowledges that the Supreme Court, in its recent decision in *Fischer v. United States*, 144 S. Ct. 2176, 2186 (2024), held that § 1512(c)(2) criminalizes "impairing the availability of other things used in an official proceeding . . . *such as witness testimony*." (Emphasis added.) *See* Dkt. 143 at 23. While the Court cited *United States v. Mintmire*, 507 F.3d 1273 (11th Cir. 2007), as an example, it did not hold that an individual's conduct must be as severe as that in *Mintmire* to violate § 1512(c)(2), as Tok suggests. Dkt. 143 at 23-24. Rather, the Court simply affirmed *Mintmire* as an example of interfering with "witness testimony." *Fischer*, 144 S. Ct. at 2186. That D.O.O. and A.K. subsequently made statements—after they had time to get their stories straight, *e.g.*, Dkt. 73-3 at 28 (Z.H.D. spent the night at D.O.O.'s house before they were interviewed)—does not alter the fact that Tok impeded investigators' ability to take their statements immediately after the crash, and completely prevented them from taking T.C.'s statement or testing his sobriety. This is the exact type of conduct that the Supreme Court recently concluded falls with the scope of § 1512(c)(2). *Fischer*, 144 S. Ct. at 2186 ("[S]ubsection (c)(2)

5

makes it a crime to impair the availability or integrity of records, documents, or objects used in an official proceeding in ways other than those specified in (c)(1) . . . . Subsection (c)(2) also ensures that liability is still imposed for impairing the availability or integrity of *other* things used in an official proceeding beyond the "record[s], document[s], or other object[s]" enumerated in (c)(1), such as witness testimony or intangible information.").

Tok argues that the Court should not consider potential state law charges because, in Tok's view, the charge of Destroying, Destroying, Concealing or Altering Evidence does not fall within the Appendix to the Treaty. Dkt. 143 at 24-25. Tok's reading of Item 19 of the Appendix ignores that this section was written in the disjunctive and that "interference with an investigation of a violation of a criminal statute" may be accomplished by "impeding" a "witness, or duly authorized criminal investigator." Dkt. 73-1 at 43. The ordinary definition of "impeding" does not require intimidation, bribery, threats, or misleading a witness, as Tok claims, Dkt. 143 at 25, but simply means "to interfere with or slow the progress of." *See* "Impede." Merriam-Webster.com Dictionary, *available at* https://www.merriam-webster.com/dictionary/impede (accessed Sept. 24, 2024). That is exactly what Tok did in preventing investigators from taking witness statements at the crash site, making their own observations of T.C.'s behavior, and testing T.C. for alcohol or drug usage and in taking the victim's cellphone. Moreover, Tok's attempt to convince the Court to adopt an overly strict reading of Item 19 ignores the longstanding extradition caselaw that "[e]xtradition treaties are to be liberally, not strictly, construed." *Factor v. Laubenheimer*, 290 U.S. 276, 303 (1933); *see also In re Extradition of Nezirovic*, No. CIV.A. 7:12MC39, 2013 WL 5202420, at *5 (W.D. Va. Sept. 16, 2013) ("Treaties are construed liberally to favor the obligation to surrender fugitives.") (citation omitted). Accordingly, the Court may consider state law charges to determine her extraditability—here, M.G.L. c. 268, §§ 13B and 13E.

> Section 13B criminalizes those who:
>
> willfully, either directly or indirectly . . . mislead . . . another person who is a: (A) witness or potential witness; (B) person who is or was aware of information, records, documents or objects that relate to a violation of a criminal law . . . ; (C) . . . police officer, . . . [or] investigator . . ., with the intent or with reckless disregard for the fact that it may  . . . impede, obstruct, delay, prevent or otherwise interfere with: a criminal investigation at any stage, a grand jury proceeding, . . . or other criminal proceeding of any type.

The Supreme Judicial Court has held that conduct is "misleading" if "it reasonably could lead investigators to pursue a course of investigation materially different from the course they otherwise would have pursued." *Commonwealth v. Paquette*, 475 Mass. 793, 801 (2016). In removing T.C., D.O.O., and A.K. from the crash site before they could be interviewed (and the driver immediately identified) and before T.C.'s intoxication level could be tested, Tok lead investigators away from pursuing enhanced charges against T.C. for driving under the influence and from seeking an earlier arrest warrant (before T.C. could flee the country). *E.g.*, Dkt. 73-4 at 17-18. With respect to lying to the security guards about knowing the owner of the cellphone, Tok changed their course of conduct from turning the phone over to police as they originally intended to relying on Tok to return the phone to the victim. *E.g.*, Dkt. 73-3 at 35. Contrary to Tok's assertion, Dkt. 143 at __, the holding in *Commonwealth v. Tejeda*, 476 Mass. 817 (2017), does not alter this analysis. There, the SJC found that the destruction of evidence was not a violation of § 13B because the defendant destroyed the evidence in full view of the police and took no steps to mislead them. *Id.* at 820. In contrast, Tok lied to security guards about knowing the owner of the phone and took T.C. and his friends from the scene without police knowledge.

For taking the victim's phone from the security guards, promising to return it to the victim, and subsequently leaving it behind in her driver's car, Tok could also be charged under M.G.L. c. 268 § 13E because she "conceal[ed]" an "object . . . with the intent to impair . . . [its] availability

7

for use in an official proceeding." Tok suggests that her Mr. Kiziltepe ensured the phone was made available to police, Dkt. 143 at 27, but the driver discovered the phone only by chance, and only after Tok insisted on keeping the phone after the security guards asked her to return it and after she demonstrated her intent to conceal by telling D.O.O.'s mother that she wished she had not provided her name and contact information to the security guards. *E.g.*, Dkt. 73-3 at 14, 26, 32, 34, 36.

### III. The Treaty Does Not Require Formal Charges

In arguing that she is not extraditable, Tok appears to conflate "prosecution" with "charges" and, like T.C., misreads *Aguasvivas v. Pompeo*, 984 F.3d 1047 (1st Cir. 2021). *See* Dkt. 143 at 28-29. For the reasons outlined in the government's response to T.C.'s nearly identical argument, Dkt. 114 at 16-19, which the government incorporates herein by reference, Tok is incorrect that Türkiye must file formal charges against her before she can be extradited.

### IV. Tok's Remaining Arguments Are Without Merit

Tok incorrectly suggests that Türkiye hid evidence that D.O.O.'s mother (Berna Öcalgiray), and not Tok, took the cellphone. As the government explained in its opposition to Tok's motion for release, Dkt. 101 at 7-9, which is incorporated herein by reference, Türkiye is not required to submit its entire case file or try its case in U.S. courts. At most, Tok has raised a potential defense, which is not within the scope of the Court's review, and in any event does not negate probable cause, particularly where the cellphone was found under the rear car seat where Tok was last sitting. *See* Dkt. 83 at 9-12.

Tok's suggestion that removing witnesses from the scene of a crash is not "of legal concern," Dkt. 143 at 32, is belied by the fact that Türkiye is seeking her extradition for a violation of Article 281 for that exact conduct. As discussed *supra*, Türkiye's interpretation of its own law—

as addressed in both its original extradition request and its supplement—is entitled to great deference.

Tok's focus on the absence of evidence that she tried to influence D.O.O. or A.K.'s statements, Dkt. 143 at 32, is misplaced. Article 281 on its face criminalizes concealment, which is what Tok did by removing T.C. and his friends from the scene and taking the victim's cellphone and leaving it in her car.

Contrary to Tok's claims, Dkt. 143 at 34-35, an alcohol test was not merely "theoretically available." Here, the crash occurred late on a Friday night, surveillance images and witness statements place T.C. and his friends at a liquor store just before the crash, and the crash was a result of T.C. driving recklessly—more than 85 miles per hour above the speed limit despite requests that he slow down—and with an inability to react fast enough to avoid hitting the victims. *E.g.*, Dkt. 73-3 at 5-6, 25, 27-28, 29-30, 38. This is not like testing a stabbing suspect for gunpowder residue as Tok suggests; it is testing a seemingly impaired driver for an alcohol or drug impairment.

Contrary to Tok's claim, Dkt. 143 at 36-37, there is ample evidence that she intended to conceal the cellphone. She lied to the security guards that she knew the owner. She refused to return the cellphone to the security guards despite their requests. And she harassed D.O.O.'s mother for merely providing her name and contact information. The suggestion that she returned to the crash scene to "check on the well-being of the parties," *id.* at 37, is belied by the fact that she told her driver to turn around as soon as she saw a police presence; instead of staying to ask about the victims, she fled the country within hours.

In sum, Türkiye seeks Tok's extradition for the offenses of Destroying, Concealing or Altering Evidence, in violation of Article 281, and Protecting an Offender, in violation of Article

283. Tok focuses her probable cause arguments only on Article 281. Türkiye has alleged multiple ways in which she violated that statute, and while there is probable cause on each, the Court need find only one in order to certify her extraditability.

## CONCLUSION

For the foregoing reasons as well as those outline in the government's opening brief, Dkt. 83, the United States requests that the Court certify to the Secretary of State that Eylem Tok is extraditable to Türkiye on both offenses for which her extradition is requested.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: */s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
Assistant U.S. Attorney

Date: September 25, 2024

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
Assistant U.S. Attorney